UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-20348-SCOLA

UNITED STATES OF AMERICA

v.

ISAAC HALWANI,

       **Defendant.**
_____/

**PRELIMINARY ORDER OF FORFEITURE**

THIS MATTER is before the Court upon motion of the United States of America (the "United States") for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Isaac Halwani (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On August 24, 2023, a federal grand jury returned an Indictment charging the Defendant with four counts of wire fraud in violation of 18 U.S.C. § 1343. Indictment, ECF No. 3. The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1343, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses and fraud scheme, pursuant to 18 U.S.C. § 981(a)(1)(C). *See id.* at 6.

On July 1, 2024, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Minute Entry, ECF No. 38; Plea Agreement ¶ 1, ECF No. 36. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $10,020,192.06. *See* Plea Agreement ¶ 11. In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual

Proffer, ECF No. 37.  The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 3.

In or around January 2021, Defendant falsely and fraudulently represented to Victim 1 that Defendant was a successful bulk food re-seller and that he had a profitable business re-selling personal protective equipment ("PPE"), such as masks, gloves, and hand-sanitizer.  *See* Factual Proffer 1. Defendant falsely and fraudulently represented to Victim 1 that each re-selling transaction generated returns of twenty to twenty-five percent and that investors like Victim 1 would receive monthly returns of five percent on their investments. *See id*.

From in or around January 2021, through in or around April 2021, Victim 1 made various investments with Defendant for what Victim 1 believed were investments in the re-sale of PPE. *See id*. at 1–2.  Although Defendant made some repayments on these PPE deals to Victim 1, unbeknownst to Victim 1, no such deals existed.  *See id*. at 2.  Defendant was using Victim 1's own money to repay Victim 1 to gain his trust by making him believe that Victim 1 and Defendant were involved in successful deals for the re-sale of PPE.  *See id*.

From in or around January 2022, through in or around April 2022, Victim 1 made various investments with Defendant for what Victim 1 believed were investments in Defendant's food distribution business.  *See id*.  Unbeknownst to Victim 1, no such food distribution deals existed. *See* Factual Proffer 2.  To create the illusion of the existence of these deals, Defendant created false and fraudulent invoices and purchase orders that he sent to Victim 1 using fabricated email addresses that Defendant also created, and which purported to be on behalf of different businesses. *See id*.  Defendant also opened bank accounts in the names of these businesses, over which he had complete control: Defendant was the manager and registered agent of BH Frozen Wheels, LLC; the manager of BH Hands On Distributors, LLC; the registered agent and authorized representative

of Deerfield Ice Cream, LLC; and the manager and registered agent of Frozen Wheels, LLC. *See id*.

To induce Victim 1 to invest, Defendant made numerous materially false and fraudulent statements to Victim 1, such as promising Victim 1 that he would receive a guaranteed monthly return on his investment; Victim 1's money would be used for deals related to the re-sale of PPE and a food distribution business opportunity; and that the investment opportunities were secure and profitable. *See id*.

Defendant also concealed and omitted material facts to Victim 1, stating that the PPE resale deals and the food distribution business deal did not exist; that Defendant used Victim 1's own money to make repayments to Victim 1 and create the illusion that Victim I and Defendant were engaged in successful business opportunities; and that Defendant diverted Victim l's investment money to pay for his personal expenses, and to make payments to unrelated individuals and unrelated companies.  *See id*. at 2–3.

For the purpose of executing and in furtherance of this scheme and artifice to defraud, Defendant knowingly transmitted and caused to be transmitted in interstate commerce a wire transfer of approximately $257,501.31 from Victim's company bank account in the Southern District of Florida to Deerfield Ice Cream bank account through servers located outside of the Southern District of Florida, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, as charged in Count 1 of the Indictment. *See id*. at 3.

As a result of his false and fraudulent representations to Victim 1, Defendant obtained approximately $12,642,015.41 from Victim 1 and then used it for his personal use, such as

repaying personal debts, paying personal expenses such as buying luxury watches, bills and credit cards, transferring money to his family and unrelated individuals, making loan payments for exotic cars such as Porsche and Ferrari, paying a private membership-only (Fisher Island Club), and making payments to unrelated companies. *See* Factual Proffer 3.

Victim 1 invested a total of $12,642,015.41 with the Defendant and the Defendant returned approximately $2,621,823.35 to Victim 1. *See id*. Additionally, Defendant admitted this criminal conduct on a recording. Specifically, Defendant admitted he took approximately $10 million from Victim 1 by himself, that he acted alone in committing this fraud, and that he created the fake emails, fake purchase orders, fake invoices, and bank accounts in order to carry out his scheme to defraud Victim 1. *See id*. at 4.

Based on the record in this case, the total value of the proceeds traceable to the offence of conviction and fraud scheme is $10,020,192.06, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion (**ECF No. 47**) is **GRANTED**, and it is hereby **ORDERED** that:

1.  Pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $$10,020,192.06 is hereby entered against the Defendant.

2.  The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3.  Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Miami, Florida, on September 16, 2024.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE